The writing, good morning, welcome. Please proceed. Thank you, Your Honor. I'd like to focus on two issues in the argument, Your Honor. The trough means, construction of the trough means, and the upwardly opening slide surface. The trough means is a phrase that has no ordinary meaning. Proslide has argued in its brief that it has no ordinary meaning, but there is no evidence whatsoever that there is an ordinary meaning for that constructed phrase, trough means. What should be important in the analysis of the trough means and what it means in the context of the patent is what is the function of the trough means. So I'd like to focus on what the function of the trough means in the invention, in the specification is. Well, why does it matter? I thought the district judge ruled that the phrase was not a means plus function claim, so why do we care about the function? If it describes structure, we need to focus on what structure does it suggest or describe, but function is irrelevant. I was not suggesting it was a means plus function clause, Your Honor, but what the structure does in the specification helps you understand what a trough means is. The court construed it as an open, non-tube-like structure or conduit and did not go into what is important in determining what you should include and not include, if anything, from the specification. I thought the judge did. I thought the judge said part of the function was to provide better visibility so the slide operator could see users of the slide at all points in their descent. In fact, Your Honor, the court did not conclude that visibility was a part of a trough means. The court said instead openness, openness in the context of not having a roof. Okay, but we're just quibbling about cement. The court had to interpret the meaning of the word trough, a word in the claim. Yes, Your Honor. The court looked to the explanation of the problems in the prior art and what the inventor was focusing on and found the references, as you say, that use the word open or openness and deduced from that that the reason the claim drafter used a term like trough as distinct from an alternative like tube was that a tube wouldn't allow you to view the users as they slid down the slide, whereas a trough-type shape would allow you to observe the users. So that seemed to me to be perfectly sensible. That part I would agree with, Your Honor. The part that we disagree with is the court's subsequent interpretation of open when it But when the second summary judgment motion occurred, the court interpreted open as prohibiting any sort of roof or cover. Well, it looked to me like the interpretation could be capsulized in the phrase open to view. That has nothing to do with completely enclosed or completely open, open to view of the users. And we would submit, Your Honor, that if that is the correct interpretation of a trough means that the ProSlide Tornado is definitely open to view. In fact, there is no evidence whatsoever that the ProSlide Tornado is not open to view, and there is evidence to the contrary in the form of the expert submissions that we provided that the ProSlide Tornado is indeed fully open to view. There are many places. I don't understand. The apparatus depicted in your easel-mounted demonstrative has two parts that seem quite distinct from one another. One I would describe as a green tube with a downward trajectory leading to a funnel-shaped or bowl-shaped portion. I take it you're just referring to the funnel-shaped portion, not the tube. That's correct, Your Honor. The funnel or cone is the main part of the tornado. The trough portion is the lower part below the spring. But what about the green tube that the user starts out in? That's entirely closed for quite a distance. So if I'm the operator, I certainly can't see any kid who's anywhere inside that long, that's correct, Your Honor. So that user, for all that time and distance, is not open to the operator's view. There was no finding by the district court that the tube over here leading to the entrance was in any way part of what was not open. The court's conclusion was that this portion above the spray bars where the raft never goes, that was a roof that precluded this part, the trough portion, from being open. The district court's decision had nothing to do with this. This is a conventional tube that leads to the slide entrance. It is not part of what we contend was the trough means, and there was no argument that the district court, a little by coastline, that this trough means was closed in their terminology because of the presence of tornado. There is a portion at the exit end that is covered. It's just like the tube up above, almost. I would not say that it's just like the tube up above. We actually have an illustration of that, Your Honor. The green one, by the way, Your Honor, is from our brief, our main brief, page 11. But it is a tube. It's shorter than the upstream tube, but it's still a tube. You agree with that, don't you? Actually, no, Your Honor, I don't agree with that because it does not perform the function of a tube. But it's structure. A tube is structure. Forget function. It doesn't matter whether it's carrying sliders or water or cement slurry. That's not the point. It's a structure. This is a claim drawn, as I read it, entirely to structures. Right, Your Honor, and the structure is a trough means and a slide surface. You're arguing that the top of the tube is a roof, right? We are arguing that the top of the funnel structure, essentially everything between the spray bars going all the way down, is a roof. Okay, but why that's not, I mean, I usually think of a roof as being a separate structure. It's not a separate structure here, a roof can be a unitary structure. It can be a separate structure. The question in whether additional structure is something that prohibits infringement is a question of whether an inherent feature of the claimed element is missing. And we submit, Your Honor, that the inherent features of a trough are to provide the back and forth motion. That's the most important function of tube could be a trough, right? Only the bottom part is the trough and the top part is a roof. No, Your Honor, because a tube has an ordinary meaning in the water slide arc and a tube is a specialized structure like this, whereas a trough in the invention has to be able to provide that back and forth motion. And a tube, as that is known in the water slide arc, could never provide that back and forth motion. And that's why there's a significant difference. And that's why what you're pointing to down here is really just at the exit portion that has nothing to do with the functioning of the trough. In fact, if we look at, this is our main brief, page 11. This is the original design of the ProSlide Tornado. They sold two models, they actually sold, had contracts to sell two models of the ProSlide Tornado. That was, this structure had the same funnel shape, then they simply added the roof portion. No change whatsoever in the functioning of the slide, no deviation from the functioning of the trough portion that's described. That's only true if you premise that there's only one function of the trough, and that is to create the oscillating pathway. If it has a second function to be open to view, then the connotation of trough suddenly becomes very different. It can't have a roof, or it's no longer open to view. I disagree, your honor. A trough can have a roof and still be open to view, and there are many examples one could find of that. For example, indoor slides have roofs over them and they're open to view. You have to look at the particular structure, the particular roof, to determine if it precludes openness or not. Well, obviously, it's a question of geometry. It depends where the operator is. Of course, even a tube is open to view. If one gets at the mouth of the tube and looks back up the tube, but seen from the side, the tube is not open to view. It's very much the same with regard to this thing that we're calling the roof. If the operator is either directly up the axis or down the axis of the funnel, yes, the users can be observed at all times. But if the operator's at any other angle, no, he's not going to be able to see the user. But in this instance, your honor, there is no evidence that the operators in this motion, on this record, there's no evidence that the operators cannot see the interior operation, the complete interior operation. Is there any evidence that they can? Yes, your honor. We submitted evidence from our experts who said that the slides were fully visible. And if you look, for example... Fully visible from where? From the operator station. But they're also visible from many other locations. And I would submit, your honor, although this was not an issue on the summary judgment level, but I would submit, your honor, that one could, for example, put blinders on the operator and say that it's not visible. Or one could have the operator stand behind a wall and suddenly say that it's not visible. And that should not define whether a trough is present. What should define whether a trough is present is... Look, why aren't the competitors in the industry entitled to some clarity of notice? If you want to cover the tubes or funnels or roof troughs or other sort of structures, fine. Then say so clearly in the patent. Everybody else will know what's covered. But when your only warning to the competitors is a trough and there's this discussion about openness to the operator for viewing, I don't think you've been fair to the competitors to put them on notice that things that have roofs or funnels or other shapes or tubes are also covered. I would submit, your honor, that we have provided adequate notice because the question that's described in the patent is visibility. And when you have a slide like the ProSlide Tornado that does provide that full visibility where you can see throughout the slide surface. From the angle of this photograph? Absolutely. From other angles? Not at all. And from the angle of this photograph and from many angles, the point is there's a dramatic difference in visibility, your honor, between a conventional tube and this extremely open ProSlide Tornado. So why not put that in the language of the claim? I mean, there's nothing in there about in the claim language about operator visibility, is there? That's correct, your honor, and there's nothing in the claim language about openness. The only phrases... You use the word trough, which suggests openness, right? No, your honor, because there are many kinds of troughs. Tube troughs. Well, I wouldn't use that term, your honor, because it was not used... Look, it may well be that you could have gotten a patent with broader coverage if you used a different word, but it's an awfully big stretch, it seems to me, to say that a trough includes entirely enclosed structures. Well, your honor, from the... If we look at the specification, which Phillips requires us to do, the trough does not... The specification does not talk about enclosed structures. It does not talk about having roofs of any sort. What the specification talks about is visibility. So if we're going to impose a limitation on these claims, which don't even use the word open, if we're going to impose an openness limitation on these claims, we should look to what the specification says and its visibility. That is a factual issue. I don't see how you can argue that. It seems to me that the normal meaning of the word trough is something that has an open top. Your honor, there is no evidence in the record on any normal meaning of the word trough. I don't need evidence in the record. It's common sense. Anybody who knows the trough is at least partly open in its upper portion, and something that's totally closed in its upper portion, we would not think is a trough. Your honor, we gave this example in our brief. This is page 38 of our brief. It's a swimming pool, which has a trough. You can put a partial cover over it, like a partial cover over the tornado, and it still has a trough. One would not say that this trough disappears merely because one put a partial cover over it. If you think of, for example, the Dallas Cowboy football stadium, which has a partial covering over the bowl parts of the stadium, that doesn't change the stadium from having a trough part suddenly because it has a partial roof. There are many examples one could think of, a tub, a bathtub with a tent portion over it, a fancy hotel. That would be a covered bathtub, but it would still have a trough for the tub. I think your position is very clear. Let's hear from the other side. Mr. Barney. Thank you, your honor. Welcome. Good morning. James Barney with Pennington Henderson. I'm an actual defendant pro-slide. We've heard today from Waterfront that they don't believe trough means has an ordinary meaning, and that they don't see anything in the patent that specifically limits the trough means to an open top structure. That's not quite what he said. He said that there was no evidence in the record of an ordinary meaning of trough. That's not quite the same as saying it lacks an ordinary meaning. Thank you for the correction, your honor, and that's true. That is what he said, and we disagree with that, and I would like to, we disagree with it in two respects. First, we think it does have an ordinary meaning, as your honor just noted, but also that the specification does specifically relate the word trough or trough means to an open top structure. Did Judge Liu rely on a dictionary or some like source to get a beginning sense of what trough connotes? Your honor, there were dictionaries that were discussed during the claim construction. None of them are in the record, but the district court specifically said that it was following Phillips in that the meaning, the ordinary meaning of the term is that which is divine from the intrinsic evidence as read by a person of ordinary skill in the art, and if I may, I would like to refer the court to column one. So then are we, are we limited to the specification and not permitted to look at a dictionary for this perhaps non-technical word? Not at all, your honor. I think you're perfectly free to consult the dictionary, and I think if you did consult the dictionary in this case, you would see that trough is defined just as you referred to earlier, something that holds animal feed or water for a horse or a pig or whatnot, or structures that have similar. That's all it says? Well, you have a dictionary definition with you? Well, your honor, I actually looked at my dictionary at my desk. Again, it's not on the record, so I'm not submitting it. It doesn't have to be in the record. I mean, there's case after case. We look at dictionaries, you know, they don't have to be in the record. My college dictionary on my desk defined it in terms of a long, narrow structure that is, that holds water or feed for animals or structures that resemble that type of structure. There are alternative definitions. For instance, the long depression between two waves in the ocean is also sometimes called trough, and there was a definition relating to weather, which I can't recall off the top of my head, and of course, I'm not submitting that there aren't other definitions. Of course, dictionaries are going to vary, but I think in general, that is the ordinary connotation of trough. Now, when you go to the patent, I think it becomes even stronger. Of course, we know that the patentee specifically distinguished troughs from tubes, and then on top of that, I would like to refer you, of course, to column one of the patent, which is on A66, under the general description of the invention heading, and that is where the applicant laid out the three objects of the invention, the first of which was to provide, to solve the problem of user safety by providing a relatively simple, open-topped slide apparatus. He then goes on and has two more objects of the invention, but what's the key here that I'd like to focus on is the fourth paragraph under the general description of the invention. After he recites those three objects, he says, accordingly, the present invention relates to a slide apparatus comprising trough means. So, we think he's clearly relating the term trough means to those three objects of the invention, the first of which is to provide, excuse me, to provide an open-topped slide apparatus. So, to the extent that Waterfront thinks you have to find some sort of special definition beyond the ordinary meaning, we would submit it's there in column one, under the general description of the invention section. Now, to their point that there's no evidence that trough means has an ordinary meaning broader than open-topped structure or conduit, first of all, the patentee distinguished troughs and tubes. He also illustrated every embodiment in the patent, every description is an open-topped structure, but I actually think the strongest evidence on this point as to the ordinary meaning, it comes from their own brief, it comes from their own contention as to what they think. The strongest indication of the ordinary meaning of a common word is a dictionary. I understand why you don't cite it. Give us the dictionary reference in your report. Well, I apologize for that, Your Honor. I certainly did not mean to run away from dictionaries. It's just that there was none in the record on. It doesn't have to be in the record. What case says it has to be in the record? I agree, Your Honor, and I would certainly encourage Your Honors to consult dictionaries on this term because I think that you'll find that it's defined similarly to how I have described it to you. Well, opposing counsel suggested, I thought, that trough has a special different meaning in the waterslide art than it might have in general conversation. I guess your position is, well, even if it did, and even if that included enclosed type troughs, that given the wording of the specification here, the drafter was acting, as we love to say, as his own lexicographer to have a peculiar, different definition than is the norm in the waterslide art, and under his peculiar definition as set forth in the specification, it cannot be enclosed. That's correct, Your Honor. That is our position. So you just rest your case on the three objects of the invention and the related verbiage in the various columns. Well, I don't know that we're resting our case on that, but certainly those three objects are consistent with the usage throughout the patent is consistent. Well, I understood you to be saying one need look no further than the three objects of the invention and the use of the word trough to conclude that the trough has to have an open top. Well, we think that the use of trough throughout the specification is consistent, and it's always used to describe an open top. I would only suggest, and we also think there's an ordinary meaning, and therefore you don't need to find a, quote, disclaimer or a special definition, because the ordinary meaning is what is applied. I'm only suggesting that to the extent that Waterfront feels that there is no ordinary meaning and that you have to find some sort of disclaimer or special definition, it appears in column one of the patent under the general description of the invention. And moreover, I'd like to point out, in terms of this idea of ordinary meaning, if you turn to page 30 of the blue brief, of their opening brief, they are arguing that trough means should be construed to mean, quote, a trough or conduit. So clearly, if they're arguing that the term trough should be redefined as trough or conduit, they're clearly trying to broaden that term beyond the ordinary meaning of trough. Otherwise, there's no need to put in the word conduit. The district court rejected that approach, and we would ask that this court do the same. In terms of the idea of a visible slide surface, Waterfront has consistently tried to turn this to a functional term instead of a structural term. It is not a functional term. It is a structural term. And if the patentee had wanted to claim a visible slide surface, he easily could have done so by using those words. But he didn't. He claimed a structural term, which is trough, means which people in the industry, competitors, and the members of the public should be entitled to rely on. Returning to the accused tornado, there is no dispute in the case that the tornado has what they call a roof, or a top, or sometimes people call it a lid. It's got a structure that encloses, we would say, all of the slide surface, but certainly at least a portion of the slide surface, depending on how you look at it. That's a dispute. A trough can still have a roof and be a trough, right? No, Your Honor, they do not under these claims. The claims require a trough means, which is another term. But just in general parlance, a trough could have a roof. You could have a trough to keep out the animal feed trough, right? It wouldn't prevent it from being a trough. You're saying, oh, having a roof suspended over it. We would agree with that. You can put a trough, for instance, they had examples in their brief of a bathtub and a house. Obviously, there's a roof over it. Or a water slide in an indoor water park has a roof over it. But that's not what we have here. Here is one complete integral structure that comes up and closes in on itself and creates its own roof. And in the water slide industry, that's considered a trough, excuse me, that's considered a closed structure. Now, again, Who testified to that? I'm sorry? Who testified to that? In our briefs, we went through all of the evidence in that point. Tell me, who testified to that? First of all, Mr. Gene, who's a water slide designer. Where did he testify that there's an accepted meaning for trough? Oh, I apologize, Your Honor, I misunderstood your question. Mr. Gene testified that the tornado, the accused structure, is a closed structure. The trough has an accepted meaning in the water slide art. I'm asking you, who testified to that and where's that testimony? Oh, Your Honor, if I said that, I didn't mean to say that there's testimony specifically on that. The ordinary meaning is from the intrinsic evidence. So there is no special meaning in the water slide art to the word trough? Well, we think there is, but we think that is the intrinsic record. The intrinsic record of the patent. Yeah, you may be able to say that there's a special meaning given to it in this patent because of the specification, but that's not what you said. You said in the water slide art, it has a special meaning, and I'm asking you, what do you base that on? Well, first of all, the district court looked at the intrinsic record. No, no, forget that. What does that, what, you made a statement. What's it based on? The evidence that we put in our brief indicates that people in the water slide industry... What is the evidence? What is the evidence that people in the water slide industry give a special meaning to the word trough? Your Honor, I don't think that they give a special meaning to it. I think it's the ordinary meaning. Okay, so then you made a mistake in what you said. I did, Your Honor. I did not mean to say that. The evidence shows that people in the water slide industry consider the tornado a closed slide and not an open-top slide, and you have to look no further than their own 30B6 witness, Mr. Dahlin, who testified specifically, this is at A2034, and he's referring to the tornado slide that Mr. Redinger showed you a picture of, that an open one was never built. He's using the term open and he's saying an open one was never built, and all of the evidence that we submitted was consistent with that. The only thing that water funds submitted in response to our summary judgment motion on that point was the declarations of their experts, but their experts were using the wrong construction. They were equating openness with visibility. Again, the claims don't say visible slide surface. They say a trough, which is a structural term, and the claims also require that the trough, being an open-topped structure or conduit, extend from the rear inlet end of the slide where the users enter and begin sliding all the way to the front where the users exit the slide, and their experts did not create an issue of material fact on that claim construction. And finally, I'd like to just briefly, you know, refer to the hypotheticals that Mr. Redinger has shown in court. Today we've seen a pool, in the grease there was hot tubs and bathtubs and salad bars with sneeze guards and doorways with wheelchair accessible, trash cans, a lot of hypothetical examples which aren't relevant to either the claim invention or the accused product in this case. They all have significant differences. They're not water slides. They don't have slide surfaces. They don't, they're not sloped. They don't, people don't go back and forth in any of these hypothetical examples, so we don't think they're relevant to begin with, let alone that there's no evidence from a person of ordinary skill in the art about these hypothetical examples. All there is is a tourney argument, and that's not enough to preclude summary judgment. And I'd like to just finally just address this idea of additional structure. One of the arguments they raised in their brief is that the roof or the top of the tornado, which is the portion that's above the spray bars, can simply be ignored as additional structure, and or they say at the very least it creates a issue of fact as to whether that top affects a function or an essential feature of the invention. Those arguments are incorrect as a matter of law, and we cited specifically the W.E. Hall and the Becton Dickinson case, which state or which we feel hold that if a portion of the structure eliminates a required claim limitation, as the roof does here with respect to the trough means limitation, that's the end of the literal infringement analysis. There's no additional step where you go and ask, well, does that omitted limitation affect an important function of the invention? That's not a step of the literal infringement analysis. Again, we think the two cases that I just referred to are directly on point. The cases they cited, for instance, Northern Telecom and Sun Tiger, are not on point because in each of those cases the accused process or the accused product met all of the required claim limitations without having to erase or eliminate or ignore some portion of the accused structure or process. That's a very different situation than what we have here. Here, the only way they can prove that the tornado has a trough means as properly construed is by ignoring the top or electronically erasing it, which you can see throughout their briefs. They show pictures of a tornado with the top missing, which is essentially an imaginary structure. That's not the structure that actually exists in water parks. Unless the court has additional questions, we're prepared to rest on our briefs for the rest of the issues. Thank you. Mr. Reidinger, you have some rebuttal? Yes, Your Honor. We'll give you back two minutes. Thank you, Your Honor. First of all, in the whole case, the whole case dealt with an entirely different situation, but the essential question in the whole case is one that we think supports our position, which is does the added structure eliminate an inherent feature? And we submit that for the ProSlide tornado, the additional structure, the roof does not eliminate any inherent feature about that trough because the trough is doing exactly what the trough does in the patent. It provides the back and forth motion, it supports the slide surface, and it allows visibility from a host of different locations. So we don't believe that there is anything in the whole case that supports the ProSlide position. I should note that in the whole case, the plain language expressly used the word open. In our case, the word open is not in the plain language. And the additional structure in the whole case made the product, the accused product, just like the prior art, very, very different from what we have here. There's nothing like the prior art, nothing like the patent invention in the prior art. The definition, I'm switching subjects here, the definition that Mr. Barney provided from the dictionary of a trough, a long, narrow structure that holds water or feed for animals, I would submit, Your Honor, that no one would suggest that that's a definition that would apply to the water slide industry, which is why you have to look at the features of the trough that are described in the patent. To the extent that openness exists, it's visibility only. It is not the absence of a roof. Mr. Barney referred to... It's a little fanciful to call a portion of a funnel-shaped structure a roof. You can't distinguish that from any other portion of the funnel. You could call any or all portions of it a roof. Yes, you could, Your Honor, but the question of whether additional structure... It's semantics. It doesn't make any sense. A funnel is a funnel. And to say, well, one part of the funnel, if I hold it this way, is the roof, and if I twist it around that, now another part of the funnel is the roof, is just to kind of talk nonsense. But that is not the case here, Your Honor, because you can't twist the funnel in the proslide device and have it function. They have a physical structure, these spray bars, that limit the location upon which the rafts can arrive. And the fact that the roof is nothing more than additional structure, Your Honor, is well demonstrated, we believe, by the fact that they designed it without what we're characterizing as a roof portion and originally signed contracts for sale of those to two different water parks. So we believe that there is no doubt that this meets the requirements for additional structure that this court has established in the Sun Tiger case and so forth. What the position of proslide and the district court is based on are just two objects of the invention. There is much more to a trough than what those two objects of the invention would specify. And, Your Honor, if anything is open and visible, we would submit that this very large, extremely open structure is indeed visible and meets all the requirements of a trough. I think your position is clearly stated. I appreciate the argument of both counsel. We'll take the appeal under advisement. Thank you.